United States District Court
Southern District Of Texas
FILED

OCT 15 2020

David J. Bradley, Clerk

United States District Court
Southern District of Texas

**ENTERED**

October 15, 2020

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| BRIAN L. EDWARDS, | § | |
| | § | |
| **Plaintiff,** | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-00060 |
| | § | |
| FRED SOLIS, *et al.* | § | |
| | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION

Plaintiff Brian L. Edwards, a state prisoner proceeding *pro se* and *in forma pauperis*, brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against three members of the Texas Board of Pardons and Paroles (hereinafter, "the Board"), specifically, Fred Solis, Anthony Ramirez, and Charles Speirer (collectively, "Defendants"), on the main basis that they violated Plaintiff's due process rights in denying him mandatory supervised release from incarceration on August 29, 2019. (Dkt. No. 1 at 1, 3-4).

The case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b). After review of the record and relevant law, the undersigned respectfully recommends that Plaintiff's § 1983 claims against Defendants be **DISMISSED with prejudice** for the failure to state a claim and for frivolousness.

### I.  PROCEDURAL BACKGROUND

Plaintiff is an inmate in the custody of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ"), Segovia Unit in Edinburg, Texas, serving a five-year sentence for assault against a public servant.[1]  (Dkt. No. 1 at 3).  Plaintiff's complaint was received and filed in

---

[1] *See* Offender Information Search, Texas Department of Criminal Justice, https://offender.tdcj.texas.gov/ OffenderSearch/offenderDetail.action?sid=03685617 (last visited September 7, 2020).  Plaintiff's projected release date is May 6, 2022.  *Id.*

federal court on February 20, 2020. (Dkt. No. 1 at 1). Plaintiff also filed a combined memorandum and declaration in support of his complaint. (*Id.* at 1). The suit was opened as a civil action on March 4, 2020 upon Plaintiff's partial payment of his filing fee. (*Edwards v. Solis, et al.*, 7:20-MC-00238, Docket Entry dated March 4, 2020).

Through his initial complaint, Plaintiff seeks several forms of relief insofar as Defendants allegedly violated his due process rights by denying his release from incarceration under Texas' statutory scheme of mandatory supervised release. (Dkt. No. 1 at 3-4).

On April 10, 2020, Plaintiff filed a pleading entitled "More Definite Statement," which expands on his due process claim and also brings new claims. (Dkt. No. 9). Generally, Plaintiff alleges that TDCJ employees "rubber stamp" Defendants' names on documents reflecting Defendants' mandatory release decisions. (*Id.* at 2-3). Also, Plaintiff contends that his release to mandatory supervision is supported by the ongoing COVID-19 pandemic. (*Id.* at 4).

On May 18, 2020, the undersigned ordered Plaintiff to provide a more definite statement in the form of answers to several questions necessary to adequately screen his claims under the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 10). Plaintiff filed his response, another "More Definite Statement," as well as an additional declaration in support.[2] (Dkt. Nos. 11 & 12).

## II. SUMMARY OF PLAINTIFF'S CLAIMS

*Pro se* pleadings are construed liberally. *Hanes v. Kerner*, 404 U.S. 519 (1972).

---

[2] Plaintiff's initial More Definite Statement, (Dkt. No. 9), was erroneously docketed as a "Motion for a More Definite Statement." (Docket Entry dated April 16, 2020). The undersigned's order for a more definite statement, (Dkt. No. 10), was then erroneously docketed as an order granting Plaintiff's filing. (Docket Entry dated May 18, 2020). Plaintiff's response to the undersigned's order, (Dkt. No. 11), was properly docketed as a second "More Definite Statement." (Docket Entry dated May 29, 2020). Plaintiff's supplemental pleadings, i.e., Docket Nos. 9, 11, and 12, will be referred to, collectively, as the "supplemental pleadings."

The sole claim through the initial pleadings is that Defendants each "violated [Plaintiff's] Due Process Rights of [his] mandatory supervision release [date] of 8-29-2019." (Dkt. No. 1 at 3). Plaintiff alleges that Defendants—

> —[v]iolated [his] right to Due Process of [his] release to 8-29-2019 Mandatory Supervision for they failed to prove . . . [g]ood time not congruent with [his] rehabilitation and . . . that [his] release would endanger the public. [Plaintiff] was never afforded proper due process of [his] vested liberty interest of [his] 8-29-2019 Mandatory Supervision projected release date for all [he] received was a 1-2 minute one sided bifurcated bias[ed] interview by [Segovia] Unit Institutional Parole Officer C. Ramirez . . . and was illegally denied release to [his] 8-29-2019 Mandatory Supervision projected release without Due Process.

(*Id.* at 4).

In other words, Plaintiff claims that Defendants violated his due process rights by exercising their discretion to deny his release to mandatory supervision on August 29, 2019, the date he first allegedly became eligible for such release.[3] According to Plaintiff, various procedures involved in Defendants' decision were deficient, including the notice he received regarding his mandatory supervision review, the opportunity he had to be heard by the Board, and the form by which he was advised of the reasons for denial of release. (Dkt. No. 9 at 2-4; Dkt. No. 11 at 3-5).

Plaintiff seeks monetary damages as compensation for the time he has been held past August 29, 2019, (Dkt. No. 1 at 4), as well as declaratory relief, (Dkt. No. 3 at 2).[4]

---

[3] For reference, mandatory supervision is "the release of an eligible inmate sentenced to the [TDCJ's] institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." Tex. Gov't Code § 508.001(5). Whereas parole is wholly discretionary, *id.* § 508.001(6), an inmate's release to mandatory supervision is generally required "when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced[,]" *id.* § 508.147(a). Release to mandatory supervision, however, is subject to exception. Even if an inmate is otherwise eligible for mandatory supervision, they "may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." *Id.* § 508.149(b).

[4] In addition, Plaintiff seeks injunctive relief in the form of his release from confinement. (Dkt. No. 1 at 4). Notably, Plaintiff's request for relief from confinement cannot be properly addressed through a § 1983 lawsuit. Generally, a challenge to the fact or duration of confinement is construed as an application for writ

Through his supplemental pleadings, Plaintiff makes other claims that are more systemic in nature.  In particular, he alleges that Defendants and numerous TDCJ employees have conspired to systematically deny inmates release to mandatory supervision in order to keep TDCJ prisons at capacity and thus "ensure job security for all employees." (Dkt. No. 9 at 2-3).  Plaintiff alleges that, as part of this supposed scheme, Defendants did not, in fact, make the decision to deny him release to mandatory supervision; rather, certain TDCJ employees made the decision "illegally" by "rubber stamp[ing] the names of [Defendants] on all the necessary legal documents . . . ." (Dkt. No. 9 at 2).  As Plaintiff further explains,

> the Texas Board of Pardons and Paroles are allowing TDCJ Clerks, Classification and TDCJ Institutional Parole Officers to notify offenders of their review date and to make Executive decisions as to offenders['] release dates.  Giving TDCJ Executive power to deny release to mandatory supervision through their one-sided, bias[ed], and bifurcated TDCJ Unit IPO prejudicial summary reports.  Texas prisoners have become a commodity.  Texas prisons are an enterprise business with subsidiary companies like T.C.I. and BOBCO that profit[ ] off of Texas prisoners and [have] stock available for purchase.  Texas prison is no longer for rehabilitation purposes or to pay a debt to society, instead it has turned Texas prisoners into the greatest commodity worth more than oil.

(Dkt. No. 11 at 8).

Separately, alleging that the TDCJ "is contaminated and confirmed with the COVID-19 virus[,] putting [his] life at risk[,]" Plaintiff argues he is entitled to "an oral evidentiary hearing" and "immediate release . . . to mandatory supervision . . . ." (Dkt. No. 9 at 4).  He also seeks damages for "COVID-19 virus mental anguish . . . ." (*Id*. at 5).

---

of habeas corpus under 28 U.S.C. § 2254.  *Caldwell v. Line*, 679 F.2d 494, 496 (5th Cir. 1982) ("When a state prisoner attacks the fact or length of his confinement, the appropriate cause of action is a petition for habeas corpus, even though the facts of the complaint might otherwise be sufficient to state a claim under §1983.").  Indeed, Plaintiff has a habeas action currently pending in the Southern District of Texas, through which he similarly complains that he was illegally denied release to mandatory supervision as of the initial eligibility date of August 29, 2019.  (*Edwards v. Davis*, 7:20-CV-00038, Dkt. No. 6 at 1).  Because the injunctive relief sought by Plaintiff here is not cognizable under § 1983 and is being requested through that separate habeas action, injunctive relief should not be considered here and should otherwise be denied.

### III.   STANDARD OF REVIEW UNDER THE PLRA

Pursuant to the PLRA, a court must dismiss a prisoner's *pro se* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The action is subject to such screening regardless of whether the prisoner is allowed to proceed *in forma pauperis*. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam).

A complaint may be dismissed as frivolous if the claim lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992). The plaintiff's factual allegations must be weighted in favor of the plaintiff unless they are clearly baseless. *Id.* at 32-33. Under the PLRA, a court may "pierce the veil of the complaint's factual allegations" and dismiss the complaint as factually frivolous if the facts alleged are "fanciful," "fantastic," or "delusional." *Id.* This inquiry can be guided by judicially noticeable facts. *Id.* at 33; *Brown v. Philadelphia*, 331 F. App'x 898, 900 (3d Cir. 2009) (per curiam).

A court may not dismiss the complaint, however, simply because it finds the allegations unlikely. *Denton*, 504 U.S. at 33. A complaint is not factually frivolous if it could be remedied through more specific pleading. *See id.* at 34; *see also Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). At the same time, a district court does not have to accept allegations that are purely conclusory or speculative. *Kinney v. Shannon*, 630 F. App'x 258, 261 (5th Cir. 2015) (per curiam) (citing *Coleman v. Sweetin*, 745 F.3d 756, 763-64 (5th Cir. 2014)).

"A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).

## IV.  ANALYSIS

As a threshold matter, Defendants are immune from suit in both their official and individual capacities for monetary damages.  Plaintiff's due process, "rubber-stamping," and COVID-19 claims are otherwise meritless or frivolous.  Each of these matters is discussed in turn.

### A. Immunity

Defendants are immune from suit in their official capacities for monetary damages under the Eleventh Amendment.  Generally, the Eleventh Amendment divests federal courts of jurisdiction to entertain suits directed against the states.  *Port Auth. Trans-Hudson v. Feeney*, 495 U.S. 299, 304 (1990).  The Eleventh Amendment "may not be evaded by suing state employees in their official capacity because such an indirect pleading device remains in essence a claim upon the state treasury.  State officials sued in their official capacity are not deemed 'persons' subject to suit within the meaning of § 1983."  *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994) (citations omitted).

Because Defendants are each members of the Board, and thus employees of the State of Texas, the Eleventh Amendment prohibits suit against them for monetary damages in their official capacity under § 1983.  *See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir.1995) (per curiam) ("The Texas Board of Pardons and Paroles, a division of the Texas Department of Criminal Justice, is cloaked with Eleventh Amendment immunity.").

Defendants are also immune from suit for monetary damages in their individual capacities.  The Fifth Circuit has long held that "parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers."  *Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir. 1990).  Section 504.149(b) of the Texas Government Code provides that an inmate who is otherwise eligible "may not be released to

mandatory supervision *if a parole panel determines* that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." Tex. Gov't Code § 508.149(b) (emphasis added). In denying Plaintiff release to mandatory supervision, Defendants were exercising the decision-making powers granted them under Texas law.

Thus, Defendants are immune from liability for exercising their discretion as part of their decision to deny Plaintiff release to mandatory supervision. *See, e.g., Hinojoza v. LaFavers*, No. A-14-CA-324-SS, 2014 WL 2808782, at *2 (W.D. Tex. June 20, 2014) (finding Board members "absolutely immune from claims against them in their individual capacities for money damages regarding their conduct in making parole decisions").

## B.  Due Process Claim

Plaintiff argues that his due process rights were violated because of alleged procedural deficiencies associated with the determination that he should not be released to mandatory supervision pursuant to § 508.149(b).

To show a violation of due process, a prisoner must establish that they have a liberty interest "that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007).   Generally, a convicted person has no inherent constitutional right to be conditionally released before the expiration of a valid sentence. *Greeholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  State statutes, however, may give rise to protected liberty interests. *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987).

Through *Ex parte Geiken*, the Texas Court of Criminal Appeals concluded that the discretionary mandatory supervision statute "does create a liberty interest in mandatory

supervision release."[5] *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (en banc); *see also Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007) (recognizing holding in *Geiken* that Texas' scheme of mandatory supervision release creates a protected liberty interest). With respect to release to mandatory supervision, "due process requires notice and a meaningful opportunity to be heard. If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Geiken*, 28 S.W.3d at 560 (citations omitted).

Insofar as Plaintiff contends that he is entitled to due process protections beyond those stated in *Geiken*, his claim is without merit. Otherwise, Plaintiff received sufficient due process in the form of notice of consideration for release, a meaningful opportunity to be heard, and an explanation for his failure to qualify for release. These matters are addressed in turn.

### 1. No Extra Process is Due to Plaintiff

To summarize his due process claim, Plaintiff complains that he did not receive *enough* due process. For example, Plaintiff implies that he is entitled to these procedural safeguards:

- The right to have the notice of a mandatory supervision hearing delivered directly to Plaintiff by the voting members of the Board, with no intermediaries (Dkt. No. 11 at 1-2);

- The right to present mitigating evidence to the voting members of the Board directly, with no intermediaries (*Id.* at 3-4);

- The right to have the voting members of the Board acknowledge personal receipt of said materials (*Id.* at 4);

- The right to present live testimony to the voting members of the Board (*Id.* at 3-4);

- The right to be informed by the Board as to detailed, specific reasons for the denial of release (*Id.* at 5).

---

[5] Before the Texas legislature amended the mandatory supervision statute in 1996, the Board would "automatically" release an eligible inmate when their actual calendar time served, plus any good conduct time accrued, equaled the term to which they were sentenced. *Ex parte Geiken*, 28 S.W.3d 553, 555 (Tex. Crim. App. 2000) (en banc).

Essentially, Plaintiff believes Defendants should have acted in conformity with more exacting standards than those set out in *Geiken*.

Plaintiff fundamentally misunderstands the process due to him. As the Supreme Court explained in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, the decision whether to release an inmate to mandatory supervision—

> —differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in a sense, an "equity" type judgment that cannot always be articulated in traditional findings.
>
> * * *
>
> It is axiomatic that due process is flexible and calls for such procedural protections as the particular situation demands. The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.

*Greenholtz*, 442 U.S. at 8, 12-13 (internal footnotes, citations, and quotations omitted).

Applying these principles, the Supreme Court in *Greenholtz* reversed the Eighth Circuit's imposition of procedural safeguards more exacting than those applied under Texas law—and not unlike those proposed by Plaintiff here. *Id.* at 13-16. The Eighth Circuit, for example, required that Nebraska inmates receive a full formal hearing, that they appear in person before the parole board and be allowed to present evidence, and that the board submit a full explanation of the facts relied upon and reasons for the denial. *Id.* at 6.

Under *Greenholtz*, "[m]erely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be

repeated, adversary hearings in order to continue the confinement." *Id.* at 14. Moreover, "requiring the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the . . . parole-release determination with a guilt determination." *Id.* at 15-16.

Since *Greenholtz*, Texas courts have specifically held that due process "does not require that an inmate receive a live hearing before the Board." *Ex Parte Long*, No. WR-64125-01, 2006 WL 560132, at *1 (Tex. Crim. App. March 8, 2006) (per curiam) (not designated for publication) (citing *Geiken*, 28 S.W.3d at 559); *see also Mendiola v. Stephens*, No. EP-13-CV-30-KC, 2013 WL 6835213, at *5 (W.D. Tex. Dec. 20, 2013). Nor does due process require "that the Board provide the particulars in the inmate's file upon which it rested the decision to deny release." *Geiken*, 28 S.W.3d at 560 (citing *Greenholtz*, 442 U.S. at 15).

In this context, as held in *Geiken*, "due process requires notice and a meaningful opportunity to be heard. If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Geiken, 28* S.W.3d at 560 (citations omitted). To the extent Plaintiff argues that additional procedural safeguards are required, e.g. procedures ensuring live testimony or proof of personal receipt of materials by the Board's members (like Defendants), such arguments are forestalled by *Greenholtz*.

Because Plaintiff is not entitled to any other procedural safeguards than those outlined in *Greenholtz* and *Geiken*, the undersigned will attend only to the issues of whether Plaintiff (i) received notice of his consideration for mandatory supervised release, (ii) was afforded a meaningful opportunity to be heard, and (iii) was informed in what respects he fell short of qualifying for early release. *See Alegria v. Thaler*, No. A-12-CA-289-SS, 2012 WL 3834897, at *3 (W.D. Tex. Sept. 4, 2012) ("[T]he only issues before this Court are (1) whether Petitioner was

provided timely notice he was to be considered for mandatory supervision release, (2) whether he was given a meaningful opportunity to be heard; in other words, a meaningful opportunity to tender information to the Board in support of his release, and (3) whether he was informed in what respects he fell short of qualifying for early release.").

### 2. Notice

The supplemental pleadings in this case make clear that Plaintiff received the notice contemplated by *Geiken*.

Plaintiff provides a copy of the notice he received from the Board. (Dkt. No. 11 at 13). This notice explains that he is being considered for release to mandatory supervision for August 29, 2019 and advises Plaintiff as to the timeframe and process by which he may submit materials for consideration by the Board:

> Records indicate that you . . . are eligible for Mandatory Supervision; however, your release to Mandatory Supervision will not occur if the Board of Pardons and Paroles determines that your accrued good conduct time is not an accurate reflection of your potential for rehabilitation and your release will endanger the public. (See Texas Government Code Section 508.149(b)). This determination is independent of any parole review decisions and will occur prior to your Projected Release Date . . . . Records currently reflect your Projected Release Date as 08/29/2019.
>
> If you wish to submit any additional information to the Board, you must do so in writing and deliver it to your unit Institutional Parole Office within 30 days from the date you receive and/or sign this notice. The Board will review your file and all available records after the 30 day period has expired and no earlier than 60 days before your Projected Release Date to determine if you will be released.

(*Id.*) (emphasis in original omitted).

Plaintiff acknowledges that this notice was provided to him on June 5, 2019. (*Id.* at 2). The notice is signed by a witness indicating the date of delivery. (*Id.* at 13). Plaintiff represents this to be someone by the name of C. Ramirez, (*see id.*) (handwritten notation at bottom of page), whom Plaintiff readily acknowledges to be an Institutional Parole Officer ("IPO") (*id.* at 2-3).

As to the claimed deficiency with the notice, Plaintiff complains that it was not personally provided to him by the Board or one of its employees. (Dkt. No. 9 at 2; Dkt. No. 11 at 1).

Plaintiff's concern is premised on a conceptual confusion.   As noted, Plaintiff acknowledges that the notice was provided to him by IPO Ramirez. Plaintiff is seemingly unaware that IPOs are, in fact, employed by the Board. TDCJ guidelines provide that IPOs "are physically assigned to TDCJ units and are *employed by the Board of Pardons and Paroles*.  They interview incarcerated offenders at TDCJ Units, federal correctional institutions, contracted facilities, and county jails statewide to prepare Parole Case Summaries." Texas Department of Criminal Justice, "Institutional  Parole  Officer,"  https://www.tdcj.texas.gov/divisions/hr/hr-home/parole-ipo.html (last visited September 7, 2020) (emphasis added).

Regardless, based on authorities like *Greenholtz* and *Geiken*, due process does not require that notice be personally provided in the manner proposed.  Instead, the relevant issues are whether the notice was timely provided and adequately advised as to when the review would occur and the opportunity to submit evidence in support of release. *See Alegria*, 2012 WL 3834897 at *3.  In these respects, Plaintiff lodges no specific complaints.

### 3. Meaningful Opportunity to be Heard

All indications are that Plaintiff also received a meaningful opportunity to be heard consistent with *Geiken*.

Based on his pleadings, Plaintiff was interviewed by IPO Ramirez in advance of Defendants' determination—although Plaintiff complains that this interview lasted no more than two minutes and was otherwise "one-sided, bias[ed], and bifurcated." (Dkt. No. 9 at 2; Dkt. No. 11 at 3).  Also, while he "attempted" to present documents at the interview, Plaintiff claims, he

"was never given any opportunity to submit any of [his] live testimony by [his] family, or any mitigating evidence, or, any support of [his] release to [Defendants]." (Dkt. No. 11 at 3-4).

However, Plaintiff's own statements and the documents he presents undermine the notion that he was not afforded a meaningful opportunity to present mitigating evidence to the Board. To begin, even assuming that his interview was "one-sided" or otherwise deficient, no claim can lie because under *Geiken* an inmate need not have an in-person interview, or live hearing, at all. *See Long*, 2006 WL 560132 at \*1 (citing *Geiken*, 28 S.W.3d at 559); *see also Mendiola*, 2013 WL 6835213 at \*5. *Geiken*'s meaningful-opportunity requirement has been interpreted to mean only that "the Board must provide an inmate with prior notice of the fact that they are to be considered for mandatory supervision release, so that the inmate may then make use of their ability to 'tender or have tendered to the Board on their behalf information in support of release.'" *Ex parte Shook*, 59 S.W.3d 174, 175-76 (Tex. Crim. App. 2001) (en banc) (quoting *Geiken*, 28 S.W.3d at 560).

In this regard, the evidence shows that Plaintiff was advised of his ability to tender documents to the Board. To the extent that IPO Ramirez did not accept any documents directly from Plaintiff at his interview, the above-referenced notice stated that if Plaintiff wished to submit "any additional information" to the Board, he was to do so "in writing and deliver it to the Institutional Parole Office"[6] within 30 days from the date of his signature or receipt of the notice. (Dkt. 11 at 13). This means his materials were due to be delivered within 30 days from June 5, 2019 (the date of receipt), or what would have been July 5, 2019. Whether Plaintiff actually took the opportunity to timely mail his materials to the parole office is another matter. Plaintiff does not specifically allege that he tried to do so within the 30-day window (only that he tried to hand

---

[6] As an inmate at the Segovia Unit, Plaintiff's assigned Institutional Parole Office is in Beeville, Texas. Texas Board of Pardons and Paroles, "Units Assigned to the Beeville IPO," https://www.tdcj.texas.gov/bpp/IPO_locations/Beeville%20IPO_units.htm (last visited Sept. 7, 2020).

the materials to IPO Ramirez at his interview), nor that any timely attempts were thwarted by

Defendants or their agents.[7]

---

[7] Plaintiff does raise allegations of the "interception" of mitigating documents, but these allegations refer to documents mailed by Plaintiff to the parole office outside of the 30-day window as to the August 29, 2019 mandatory release determination at issue. Plaintiff initially raised the allegations with his initial complaint. (Dkt. No. 9 at 2-3). Given their conclusory nature, the undersigned directed Plaintiff to explain the basis behind the allegations through its order of April 10th. (Dkt. No. 10 at 3). Rather than provide factual support or corroboration, Plaintiff responded by merely identifying a clerk at Beeville IPO, Lillian Karstedt, as the TDCJ official involved in the supposed "interception." (Dkt. No. 11 at 4). According to Plaintiff, Ms. Karstedt "intercepted [his] certain relevant materials to assure [that Defendants] only receive a prejudicial, one-sided, bifurcated summary report [from IPO Ramirez]." (Id.). Plaintiff also provided a letter from Ms. Karstedt of July 24, 2019. (Id. at 12). The letter states that Plaintiff's correspondence dated July 18, 2019 had been received, and that his mandatory release for August 29, 2019 had been considered and denied by the Board, but that "[t]he information [he] provided w[ould] be forwarded for placement in [his] permanent file to be available for consideration by the Parole Panel" for the next review date in July 2020. (Id.). As Ms. Karstedt's letter relates—and Plaintiff does not contest—while Plaintiff may have submitted mitigating materials to the Board, these were mailed well after the last day of the 30-day window of July 5, 2019 for purposes of the Board's mandatory supervision determination of August 29, 2019.

Even if the allegation of "interception" by Ms. Karstedt is somehow related to the August 29, 2019 determination and Plaintiff's due process claim here, the undersigned concludes that the allegation is merely speculative, otherwise frivolous, and may be ignored. As interpreted by the undersigned, Plaintiff is asserting that Ms. Karstedt deliberately misplaced or destroyed his correspondence and lied when representing that it would be placed in his file for Defendants' review. When weighing a plaintiff's allegations in their favor under the PLRA, "[t]he district court does not have to accept conclusory or speculative allegations." *Kinney*, 630 F. App'x at 261 (citing *Coleman*, 745 F.3d at 763-64). Accordingly, some courts disregard purely conjectural or uncorroborated allegations by prisoners of interference and tampering with correspondence and the destruction of documents. *See Smith v. Bruce*, 103 F. App'x 342, 343 (10th Cir. 2004) (not selected for publication); *see also Anderson v. Kimbrell*, No. 1:13-CV-00378-AWI-DLB PC, 2015 WL 1849875, at *3 (E.D. Cal. Apr. 22, 2015), *aff'd*, 668 F. App'x 223 (9th Cir. 2016); Taylor v. Grubbs, No. 2:15-CV-4958-RMG-MGB, 2016 WL 11201765, at *7 (D.S.C. Nov. 8, 2016). Here, Plaintiff's allegation that Ms. Karstedt "intercepted" his correspondence is raw speculation—nothing more. Plaintiff offers nothing to suggest a prior relationship with Ms. Karstedt, let alone a reason why she may have harbored personal animus against him and thus a specific motive for her ostensible actions. All indications are that she is simply a random clerk at Beeville IPO who received Plaintiff's correspondence and wrote back to him regarding the status of his mandatory release review. Perhaps the only motive Plaintiff would offer to support the "interception" is a generalized financial one. As noted, Plaintiff brings his "rubber-stamping" claim based on allegations of a wide-ranging conspiracy amongst the TDCJ's employees to keep Texas' prisons at capacity for purposes of ensuring their job security. But as discussed further below, these conspiratorial allegations are speculative and frivolous in and of themselves. Moreover, although Plaintiff's allegation of "interception" is not necessarily a fanciful one when considered alone, courts have dismissed allegations of misconduct as frivolous under the PLRA when that conduct is considered in its totality with the rest of a plaintiff's more fanciful allegations. *See Cooper v. Belcher*, No. 08-CV-01599-CMA-KMT, 2010 WL 3359709, at *8 (D. Colo. Aug. 25, 2010) (citing *Denton*, 504 U.S. at 29) (dismissing as frivolous *pro se* prisoner's allegations of retaliatory sexual abuse by numerous law enforcement authorities and correctional officers, including attorneys at district attorney's office, noting that "while each underlying action taken separately is not necessarily frivolous, a different picture emerges when all the filed actions are viewed together").

### 4. Reasons for Denial

Plaintiff was also provided the reasons for the denial of mandatory release as required by *Geiken*.

Under *Geiken*, "[i]f release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Geiken*, 28 S.W.3d at 560. Plaintiff has provided the copy of a letter dated July 18, 2019 informing him that he would be denied release to mandatory supervision. (Dkt. No. 11 at 15). The following reasons are listed:

9D1. The record indicates that the offender's accrued good conduct time is not an accurate reflection of the offender's potential for rehabilitation.

9D2. The record indicates that the offender's release would endanger the public.

1D. The record indicates that the offender has repeatedly committed criminal episodes that indicate a predisposition to commit criminal acts upon release.

2D. The record indicates the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability indicating a conscious disregard for the lives, safety, or property of others, such that the offender poses a continuing threat to public safety.

3D. The record indicates excessive substance use involvement.

5D. The record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in-absentia.

(*Id.*).

Plaintiff complains that this letter is a "standard generalized form" given to all inmates and argues that he is entitled to "written specified and specific reasons" as to his denial. (*Id.* at 5). However, "[t]he Parole Board need not give detailed reasons nor cite specific evidence; general statements pointing to the Board's statutory directives are sufficient." *Hinojoza*, 2014 WL 2808782 at *3. As the Fifth Circuit has acknowledged, due process does not require further explanation than the "paragraphs cut verbatim from the Parole Board's Directive." *See Boss v.*

*Quarterman*, 552 F.3d 425, 427-30 (5th Cir. 2008).  Thus, it is clear from the record that the statement of reasons for denial provided to Plaintiff comported with due process.

For the above reasons, as to the merits of his due process claims, Plaintiff has failed to state a federal claim upon which relief can be granted.

## C.  "Rubber-Stamping" Claim

Plaintiff claims that TDCJ employees "illegally rubber stamp" Defendants' names on legal documents in denying release to mandatory supervision as part of a scheme to "ensure job security for all employees." (Dkt. No. 9 at 2-3).  This claim is simply a variant of Plaintiff's due process-type attack, which is meritless.  However, given the fantastical and otherwise speculative and unsupported nature of this claim, the undersigned will also analyze this claim for frivolousness.

To begin, this case is similar to the situation before the District Court for the Northern District of Texas in which forty virtually identical actions were brought by inmates against the Board at the pre-parole transfer facility in Mineral Wells, Texas.  Dismissing the claims of one of these inmates in *Arguijo v. Owens*, the court stated:

> Plaintiff complains that defendants have *a practice and procedure of arbitrarily and perfunctorily denying mandatory supervision*.  Specifically, he takes issue with the manner by which the Board informs inmates that their release to mandatory supervision has been denied, complaining as follows: inmates are given no evidence or reasoned argument to support the finding that denial is required; the letter of denial is not signed; all denial letters contain standard language and identical content; the letter contains no dignified letterhead, state seal, or any other mark; and the letter is generated by a dot matrix printer on light-grade paper inferior to business stationary. Due process, however, requires none of the foregoing.
>
> Plaintiff has not alleged that he was deprived of notice of the hearing or an opportunity to be heard, nor has he alleged that he was not informed of the respects in which he fell short of qualifying.  Indeed, the denial letter plaintiff attached to his complaint informs him in what respects he falls short of qualifying for mandatory supervision.  Additionally, plaintiff is not entitled to any relief based on the allegation that inmates are given no evidence or a reasoned argument in support of the Board's decision.  Plaintiff has failed to state a claim for the denial of due process in connection with defendants' mandatory supervision procedures.

*Arguijo v. Owens*, No. 4:08-CV-140-A, 2008 WL 2388903, at *3 (N.D. Tex. June 9, 2008) (footnotes and citations omitted) (emphasis added); *see also Betts v. Owens*, No. 4:08-CV-014-A, 2008 WL 11422506, at *3 (N.D. Tex. June 9, 2008), *aff'd*, 332 F. App'x 210 (5th Cir. 2009) (per curiam); *Fuerte v. Owens*, No. 4:07-CV-695-A, 2008 WL 11452469, at *3 (N.D. Tex. June 9, 2008), *aff'd*, 334 F. App'x 689 (5th Cir. 2009) (per curiam).

Plaintiff does seemingly provide more details regarding the Board's alleged conspiracy than the inmate in above-referenced case, namely, the means and motives of the conspiracy. For example, Plaintiff claims that TDCJ employees "rubber stamp" the names of Defendants, apparently with their knowledge, and that the motive of the conspiracy is financial profit.[8] (Dkt. No. 9 at 2-3; Dkt. No. 11 at 8). However, Plaintiff's assertions and the assertions of the inmates at Mineral Wells amount to the same claim: Defendants have a practice and procedure of arbitrarily and perfunctorily denying release to mandatory supervision. Indeed, as the *Arguijo* court noted, such a claim fails because due process requires *only* that an inmate receive (i) notice of the hearing, (ii) a meaningful opportunity to be heard, and (iii) that they be provided the reasons for his denial if he is denied release. *See Arguijo*, 2008 WL 2388903 at *2-3; *see also Alegria*, 2012 WL 3834897 at *3. As discussed earlier, Plaintiff's denial of release to mandatory supervision comported with due process as so understood.

Otherwise, although Plaintiff's claims must be construed liberally, piercing the veil of his factual allegations shows that the allegations in the instant case are irrational or wholly incredible. Courts in the Fifth Circuit often dismiss claims as frivolous under the PLRA where the *pro se* prisoner's allegations describe irrational and wholly incredible conspiracies. For example, in

---

[8] According to Plaintiff, "Fred Solis, Anthony Ramirez, and Charles Speier know the facts that their clerks, TDCJ Clerks, TDCJ IPO, [and] TDCJ software are rubber stamping their names for denials to insure full capacity and job security." (Dkt. No. 11 at 8).

*Snowton v. United States*, the court dismissed the claims as "irrational and wholly incredible" where the plaintiff alleged that—

> —the United States, the Department of Health and Human Services, and Health and Human Services Secretary Alex Azar . . . deliberately failed to enforce laws and [were] withholding her medical information from her.  She allege[d] that she is HIV positive, but Defendants . . . conspired with various medical labs to withhold that information.  She attached medical reports from labs in Texas, California, Georgia, and Oklahoma showing that she is not HIV positive, but she claim[ed] [those] medical reports [were] inaccurate. She further claim[ed] Defendants [were] [t]refusing to enforce a law of accurate health reports because "[t]here [were] unlawful experimentation of implants, disease, and false claims involved."

*Snowton v. United States*, No. 3:19-CV-981-G (BT), 2019 WL 3802138, at *1 (N.D. Tex. May 30, 2019), *report and recommendation adopted*, 2019 WL 3802070 (N.D. Tex. June 13, 2019), *aff'd*, 786 F. App'x 472 (5th Cir. 2019), *cert. denied*, 140 S. Ct 2527 (Mar. 23, 2020).

Also routinely subject to summary dismissal as frivolous are claims based on wholly speculative and uncorroborated official conspiracies. *See, e.g., Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013) (per curiam) ("Silva's allegations that the Sheriff and the Warden had a policy not to staff every shift with personnel trained in basic first aid are entirely speculative and thus do not save his claim from dismissal . . . ."); *Parker v. Currie*, 359 F. App'x 488, 490 (5th Cir. 2010) (not designated for publication) ("[Plaintiff] speculates that his attacks by other inmates were in fact orchestrated by prison officials.  That fanciful characterization, without additional support, calls for dismissal."); *Stokes v. Ward*, 132 F.3d 1455, 1455 (5th Cir. 1997) (per curiam) ("Stokes' speculative allegations that [assistant district attorney] and [district attorney] conspired with the other defendants[, including judge and defense attorney,] to convict him are insufficient to establish § 1983 liability."); *see also Belle v. Thaler*, No. A-09-CA-860-LY, 2010 WL 1417751, at *4 (W.D. Tex. Apr. 6, 2010) (recognizing, in a habeas corpus case, that mere conclusory statements do not raise a constitutional issue and holding that "[t]o the extent Petitioner claims his

right to due process has been denied because the [parole board] is under political pressure to deny release to inmates convicted of intoxication manslaughter he is not entitled to relief").

Here, Plaintiff's speculative and uncorroborated allegations of a wide-ranging conspiracy to perpetuate a system of incarceration for purposes of Defendants' personal financial gain only serve to render his "rubber-stamping" claim irrational and wholly incredible. Plaintiff's "rubber-stamping" claim is, therefore, factually frivolous and fails to state a claim.

## D. COVID-19 Claim

Lastly, Plaintiff suggests that the COVID-19 pandemic should be considered when ruling on his civil suit. (Dkt. No. 9 at 4). According to Plaintiff, his prison is "contaminated" with the disease. (*Id.*). He thus cites to COVID-19 as a reason to "order [his] immediate release . . . to mandatory supervision[,]" while also seeking COVID-19 "mental anguish" damages. (*Id.* at 4-5).

To be clear, Plaintiff is *not* claiming that he was denied due process as of August 29, 2019 because Defendants failed to consider COVID-19 as a circumstance in reaching their mandatory release decision.[9] Instead, Plaintiff seems to contend that the pandemic entitles him to mandatory supervised release at the present point in time. A substantive claim for release from confinement such as this, however, is not properly addressed under § 1983 lawsuit but, rather, on habeas corpus.[10] Regardless, Plaintiff fails to point to any mandatory supervision procedures contemplating his release from confinement based on circumstances such as the current pandemic, nor has the undersigned identified any.[11] *See* Tex. Gov't Code §§ 508.141 *et seq.*

---

[9] Indeed, the mandatory release decision pre-dated the COVID-19 pandemic.

[10] Such matters are addressed more fully above through footnote 7.

[11] Of note, the Texas statutory scheme does recognize "medically recommended intensive supervision," but this typically requires that the diagnosis of some sort of illness, *see* Tex. Gov't Code § 508.146, and Plaintiff does not allege that he has COVID-19.

Otherwise, Plaintiff appears to claim that he is entitled to mental anguish damages associated with his fear of contracting COVID-19. The pleadings offer no indication that Plaintiff has in fact contracted the disease, let alone that he is being denied treatment for it. However, even assuming that his incarceration at the TDCJ puts Plaintiff at risk of contracting COVID-19, Plaintiff's claim for monetary relief against Defendants is meritless because they are not personally responsible for the conditions of his confinement.

It is well-established that "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). As the Fifth Circuit has explained, "[a] supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

For this reason, courts routinely dismiss § 1983 claims against officials when the complaint fails to allege that the official was personally involved in the claimed constitutional violation. *See, e.g.*, *Thompson*, 709 F.2d at 382 (dismissing claims insofar as defendants, as supervisory corrections officers, had no direct responsibility for mailgram delivery); *Carr v. Collier*, No. 6:18-CV-00351-TH, 2019 WL 3422939, at *3-4 (E.D. Tex. May 16, 2019) (dismissing claims where plaintiff did not allege that defendants, as supervisory prison officials, were involved in alleged harassment), *report and recommendation adopted*, 2019 WL 3413421 (E.D. Tex. Sept. 29, 2019).

Plaintiff alleges no personal involvement by Defendants here. The duties of the Board are set out according to statute. *See* Tex. Gov't Code § 508.0441. Essentially, the Board responsible for determining which eligible offenders to release on parole or discretionary mandatory supervision, and under what conditions. *Id.* Parole panels act in matters of (i) release on parole,

(ii), release to mandatory supervision, and (iii) revocation of parole or mandatory supervision. Tex. Gov't Code § 508.045(a). As members of the Board and Plaintiff's parole panel, Defendants lack the authority to directly affect the conditions of Plaintiff's confinement, nor do they have any authority to enact or implement policies that would indirectly affect those conditions. The TDCJ, and not the Board, is responsible for "provid[ing] safe and appropriate confinement . . . and [for] effectively manag[ing] or administer[ing] correctional facilities based on constitutional and statutory standards." Tex. Gov't Code § 494.001.

Moreover, to the extent that Plaintiff wishes to add new claims against new defendants to his original civil rights suit, e.g. employees of the TDCJ, such a supplemental complaint would violate federal pleading rules governing joinder of claims and parties. An attempt to file multiple lawsuits in one complaint violates Rules 18 and 20 of the Federal Rules of Civil Procedure, which set out the limits on joinder of claims and parties. *See* Fed. R. Civ. P. 18(a) (providing that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party"); *see also* Fed. R. Civ. P. 20(a)(2) (providing that "persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action"). Indeed, the Fifth Circuit has discouraged the "creative joinder of actions" by prisoners attempting to circumvent the PLRA's fee-payment and three-strikes provisions. *See Patton v. Jefferson Corr. Center*, 136 F.3d 458, 464 (5th Cir. 1998).

Here, any proposed supplemental claim against prison officials complaining about Plaintiff's conditions of confinement are unrelated to his original action against Defendants. If Plaintiff wishes to file an action against prison officials regarding the conditions of his

confinement, he is free to do so outside of the scope of the instant action, subject to the applicable federal statutes and rules governing such action.

## V. CONCLUSION

### *Recommended Disposition*

After review of the record and relevant law, the undersigned respectfully RECOMMENDS that Plaintiff's § 1983 claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim and frivolousness.

### *Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

The Clerk of Court is DIRECTED to forward a copy of this report to the parties by any receipted means.

DONE at McAllen, Texas this 15th day of October 2020.

J. SCOTT HACKER
United States Magistrate Judge